UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

FILED & ENTERED

JUL 27 2012

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY williams   DEPUTY CLERK

In re:

Functional Restoration Medical Ctr Inc

Debtor(s).

Corona Radiology Medical Center, Inc.,
Sepehr Katiraie, Sepehr Katiraie, Dr.

Plaintiff(s),

v.

Functional Restoration Medical Ctr Inc,
David K Gottlieb, Chapter 7 Trustee,
Ashor Heikali, Ebrahim Heikali, Nasser
Heikali, Moossa Heikali,  Nato Fund, Inc.,
Radnet Management, Inc.,  United
Imaging, LLC,  United Medical Imaging
Healthcare, Inc.,  United Medical Imaging
Inc,  United Medical Imaging
Management, Inc., Bruce Yasmeh

Defendant(s).

Case No.:  1:06-bk-10306-GM

Adv No:   1:08-ap-01434-GM

Chapter 7

**ORDER GRANTING DEFENDANT
CHAPTER 7 TRUSTEE DAVID GOTTLIEB'S
MOTION FOR AN AWARD OF
ATTORNEY'S FEES OF $105,203.50
AND COSTS OF $383.00**

Date: July 24, 2012
Time: 10:00 a.m.
Courtroom: Courtroom 303

Trustee David Gottlieb ("Trustee") moves for an award of $116,929 in attorney's

fees and $383 in costs.

Background

Trustee was one of a number of defendants in this adversary proceeding.  In

response to several motions for summary adjudication, on 5/10/12 the court entered a

Memorandum of Opinion on Motions for Summary Judgment ("Opinion") and an Order on Motions for Summary Judgment ("Order"), in which, among other things, the court granted the Plaintiffs summary adjudication on the first claim for declaratory relief and granted Trustee summary adjudication on all other claims and dismissed the Trustee from further involvement in this adversary proceeding.

Plaintiffs moved for limited reconsideration of the Opinion and Order, asking that the court reconsider its grant of summary adjudication to the Trustee.  The court denied Plaintiffs' motion for reconsideration.

Motion

Trustee seeks an award of attorney's fees and costs as prevailing party, pursuant to FRCP 54(d)(2), and FRBP 7054(b) and LBR 7054-1.

Trustee also cites the Asset Purchase Agreement, pursuant to which the debtor sold substantially all of its business to United Imaging (the "APA").  Paragraph 10.10 of APA awards attorneys fees to prevailing parties in actions to enforce APA or because of dispute, etc. regarding APA.  Counsel for Plaintiffs signed and approved the court order approving APA, so Plaintiffs became bound by the APA's attorneys' fees clause. California Civil Code § 1717 requires payment of attorneys fees to prevailing parties where required by contract.

Opposition

Plaintiffs oppose the motion:

(1) The court's ruling in Goodarzi is inapplicable because Goodarzi and Naheedy sought to be declared partners or tenants in common in the relevant centers, thereby

subjecting themselves to the APA.

(2) Civil Code § 1717 does not apply because Plaintiffs are not parties to the APA and their claims are not based on the APA.

(3)  Plaintiffs are the "prevailing party" under §1717:  (a) they obtained declaratory relief pursuant to claim 1, which was the only contract-based claim and (b) they obtained greater relief in the action as a whole.

(4) Trustee cannot recover attorney's fees on Claims 2-10 (which are tort claims) under Cal. Civ. Code §1717.

(5)  If awarded, fees should be allocated among other nonsettling parties and should not be awarded until final judgment in the action.

(6)  Requested fees are excessive and Plaintiffs are entitled to an offset as prevailing party on Claim 1.


Reply

This case is on all-fours with the my order in Goodarzi granting the Trustee his attorney's fees for defending the estate against an attack seeking to recover money from the estate for the sale of the estate's interest in the medical center.  The Trustee also argues that the time is right to grant the fee motion, that Katiraie  is bound by the APA, that fees for tort claims are allowable, and that the amount in the fee request is reasonable.


Analysis

This adversary proceeding arises out of the sale by the estate of all of its right, title, and interest in a series of radiology centers, including the one designated herein as

the Corona Center.  Dr. Katiraie and Corona Radiology Medical Center, Inc, (jointly

referred to herein as "Katiraie" of "Plaintiff") claimed to be a 2/3 owner of the Corona

Center and opposed the sale on the basis that his property was being transferred.

> The Court approved the sale and entered an order that included the following:
> Katiraie and Corona Radiology Medical Center, Inc. assert ownership interest in
> the Debtor's Corona imaging center and the Debtor disputes this.  Nonetheless,
> the Debtor is selling "whatever rights, title and interest the Debtor and the
> Debtor's bankruptcy estate has to the Debtor's Corona Imaging center, free and
> clear of all liens, claims, and interests; this sale is without prejudice to the
> respective rights, claims and defenses of the Debtor, on the one hand, and Dr.
> Sepher Katiraie and CRMC, on the other hand.  Nothing herein shall constitute a
> waiver, discharge, or release of any claims Dr. Sepher Katiraie and CRMC, and
> each of them, have or may have against Dr. Moosa Heikali.[1]

The Sale Order incorporated by reference the APA, which states at paragraph

10.10 that each party will pay its own expenses incurred in connection with the

Agreement or any transaction contemplated by the APA.  "If any legal action is brought

for the enforcement of this Agreement, or because of an alleged dispute, breach,

default, or misrepresentation in connection with any of the provisions of this Agreement,

the successful or prevailing party shall be entitled to recover reasonable attorneys' fees

and other costs incurred in that action or proceeding, in addition to any other relief to

which it or they may be entitled."[2]

The Sale Order was approved as to form by Steven R. Fox, attorney for Katiraie

and CRMC.

The sale was entered into by the Debtor while this was still a debtor-in-

possession chapter 11 case.  Although the Debtor had disputed whether Katiraie had an

interest in the Corona Center (which was why the Sale Order was written as it was), the

Trustee (once appointed) never claimed that the estate held any interest in those

---

[1] Functional Restoration, 1:06-bk-10306, doc. 220, ¶26.  This case will be referred to as the "Main Case."  This
particular document is referred to as the "Sale Order."
[2] Id., doc. 220, ¶5:5-12.

assets.  Further, the Trustee had received no payment for the assets claimed by Katiraie because those were specifically excluded from the sale by paragraph 26 of the Sale Order.

Before turning to an analysis and application of the law to this case, it is relevant to look at the facts of the assertions against the Trustee.  As noted in the Memorandum of Opinion on the Motion for Partial Summary Judgment,[3] the Trustee was named as a defendant in the following claims:

(1) Declaratory Judgment under 28 U.S.C.A. §2201, seeking a determination of the ownership interests of the various parties;

(2) Quiet Title under Cal. Civ. Proc. Code §761.010, for a determination of Katiraie's ownership against the interest claimed by the defendants as of 3/9/06 and 8/4/06, the date of the complaint, and the date of the memorandum;

(3) Accounting, for all monies due to Katiraie including in the post-petition/pre-sale period;

(5) Conversion, for monies due from the sale and for monies due to Katiraie in the post-petition/pre-sale period;

(6) Claim and Delivery, to recover property transferred under the sale order;

(7) Replevin, to recover property transferred under the sale order.

Everyone agreed that once the sale closed, the Trustee had no property left that could be claimed by Katiraie.  Thus there was no reason to include the Trustee in the sixth and seventh claims for relief.  The other two areas in which the Trustee is named

---

[3] Katiraie v. Gottlieb, et. al, 1:08-ap-01434, doc. 270.  This adversary proceeding will be referred to as the "Adversary Proceeding" and the Memorandum of Opinion on the Motion for Partial Summary Judgment will be referred to as the "Memorandum of Opinion."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

are those seeking a determination that Katiraie was, in fact, a 2/3 owner of the Corona

Center and whether the Debtor had paid him the required amounts during the pre-sale

period.

When asked by the Court at oral argument on July 24, 2012 why Katiraie did not

dismiss the Trustee much earlier, his counsel asserted that this case needed to go

forward as to the Trustee because the Trustee never specifically agreed that Katiraie

had an ownership interest in Corona. It is true that the Trustee did not admit or deny

Katiraie's contention that he was a 2/3 owner of the Corona Center at the time of the

sale.[4]   But the Trustee made it clear that the estate had no proceeds from the sale[5] and

this has not been contested by Katiraie.  Therefore there was no money to turnover to

Katiraie and the Trustee retained no property that Katiraie could assert an ownership

interest in.  And beyond that, the language of the Sale Order made it perfectly clear that

the only thing sold was the interest of the estate and not of Katiraie.

Whether the Trustee agreed as to the efficacy of the contract between Heikali

(the principal of the Debtor) and Katiraie or not is totally irrelevant to the outcome of this

adversary proceeding.  Even if the Trustee had asserted that there was no such

contract, the estate had no interest in it since all of the estate's property had been sold

under the Sale Order. The Trustee was not even a percipient witness whose testimony

would be required to prove the existence or non-existence of a contract.

As to the money that Katiraie claimed from the time of the petition until the sale, if

he was owed any (and the Memorandum of Opinion found that he was not), he could

have asserted this by filing an administrative claim.  If the Trustee disputed his claim,

the burden was on the Trustee to object.  There was no reason to embroil the Trustee in

---

[4] Adversary Proceeding, doc. 26.
[5] Id., doc. 46.

this hotly contested lawsuit in which the few months of collections was truly the pimple

on the back of the elephant.

FRCP 54(d) is not applicable to adversary proceedings in bankruptcy court.

Instead FRBP 7054(b) provides that "the court may allow costs to the prevailing party

except when a statute of the United States of these rules otherwise provides."  By

removing the FRCP 54(d) prohibition on attorney's fees as costs, the bankruptcy court

is given discretion in this area.  Nonetheless, case law agrees that an award of

attorney's fees to the prevailing party is not automatic, but must be based on statute,

contract, or some other recognizable theory.


Asset Purchase Agreement/California Civil Code §1717

The most obvious statutory basis in this case is whether the attorney's fee clause

in the APA, which was incorporated by reference into the Sale Order, qualifies under

Cal. Civ. Code §1717, which states in relevant part as follows:

> (a) In any action on a contract, where the contract specifically provides that
> attorney's fees and costs, which are incurred to enforce that contract, shall be
> awarded either to one of the parties or to the prevailing party, then the party who
> is determined to be the party prevailing on the contract, whether he or she is the
> party specified in the contract or not, shall be entitled to reasonable attorney's
> fees in addition to other costs. . . .
>
> Reasonable attorney's fees shall be fixed by the court, and shall be an element of
> the costs of suit.
>
> (b)(1) The court, upon notice and motion by a party, shall determine who is the
> party prevailing on the contract for purposes of this section, whether or not the
> suit proceeds to final judgment. Except as provided in paragraph (2), the party
> prevailing on the contract shall be the party who recovered a greater relief in the
> action on the contract. The court may also determine that there is no party
> prevailing on the contract for purposes of this section. . . .

So the Court must first determine whether Katiraie's objection to the sale and the

signature of his attorney as to form on the Sale Order made him a party to the APA and its attorney's fee provision.

The most similar case that I could find is <u>Super 7 Motel Associates v. Wang</u>[6], in which a real estate broker was named by the buyer of a motel in a suit for fraud and in which rescission was sought.  The broker was not an actual party to the contract, which was between the buyer and the seller, even though the broker had received his fees pursuant to that contract. The Court of Appeal noted that although fraud is a tort and not a contract claim, since the action was seeking rescission an award of fees under the contract was permitted.  However, the claim against the broker arose from his own fraud, not from a contract to which he was a party or a third party beneficiary.  So if he had lost the case he would not have been liable to the plaintiff for fees.  Thus he was not able to recover his fees under Cal. Civ. Code §1717.  However, had the contract specifically included a promise to pay the broker he would have been a third party beneficiary and would have been entitled to his attorney's fees.

Thus under California law the court must review the Sale Order and its incorporated APA to determine whether Katiraie qualifies as a party or as a third party beneficiary.

Katiraie argue that since he (or his counsel) did not sign the APA and only approved the Sale Order as to form, he is not bound by the attorneys' fee provision of the APA.  But in fact the main thrust of this whole action against the Trustee is an attack on the Sale Order and an effort to declare that the estate had not actually sold Katiraie's interest because the estate did not own that or that somehow the Trustee received funds from the sale for Katiraie's interest and that those funds are due to Katiraie.

---

[6] 16 Cal.App.4th 541 (1993).

Further, as noted in the Memorandum of Opinion, one of the arguments made by Plaintiff's counsel was that Debtor might not have transferred its 1/3 interest in CRMC as part of the sale and thus Katiraie and the Trustee are co-owners of CRMC.[7]  This was a direct attack on the APA and the Court did not accept this argument.  The Third Amended Complaint also named the Trustee as a defendant in the Quiet Title claim and the claim for an accounting

The Trustee was the prevailing party on all of these claims (except as to declaratory relief, which the Trustee had not disputed) and all of them arose out of the APA and/or the Sale Order.

Katiraie certainly never received anything under the APA or the Sale Order.  In fact any interest of his was specifically excluded.  He was not a third-party beneficiary since the APA was not made for his benefit or even with him in mind.  However, as I found in the Goodarzi case, the Sale Order was in fact meant to bind all persons, whether they agreed or not.

Although Katiraie argues otherwise, this case is a mirror image of the Goodarzi[8] one.  In both cases, the Plaintiffs asserted a partial ownership interest in one or more of the centers that was sold.  In both cases the Court was aware of this and the Sale Order specified that the sale would only be of the estate's right, title, and interest, and not of any interest of any third party (namely Katiraie in this case, Goodarzi and Naheedy in the Goodarzi case).  Further, in both cases the money paid to the estate for the purchase was not for the purchase of any interest of the third party, just for the interest of the estate.  This was made clear in the APA and the Sale Order.

Nonetheless, the Plaintiff(s) sued the Trustee seeking declaratory relief and to

---

[7] Memorandum of Opinion, p. 24.
[8] Goodarzi v. Functional Restoration Medical Ctr., Inc, 1:06-ap-01230.

recover money from the estate.  In the Goodarzi case there was a somewhat legitimate reason to proceed against the Trustee since the Goodarzi parties had paid Heikali for their interest prepetition and he had never completed the transfer of their partial ownership interest.  The lawsuit was to determine whether the Goodarzi parties had an unsecured claim against the estate, or a 40% ownership interest in proceeds received as a date certain, or had any interest in the property at all.

The court found that the Goodarzi parties were, in fact, general partners in the center in question with a 40% interest.  But since the sale order only sold the estate's interest in that center, the estate received no proceeds for the transfer of the Goodarzi parties' 40% interest, because that was never transferred.  I noted in the findings after trial in that case: "In summary, the plaintiffs are looking to the wrong defendant.  They chose to maintain their rights in the Brookshire Center and must pursue those rights against those who are operating this business.  Had they allowed the estate to sell their interest, then this complaint would have been well-taken.  But this is not what happened."[9]

Here although the Debtor had disputed whether Katiraie had an interest in the Corona Center (which was why the Sale Order was written as it was), the Trustee (once appointed) never claimed that the estate held any interest in those assets.  As in the Goodarzi case, I also found that the Trustee had received no payment for the assets claimed by Katiraie (which the court noted from the beginning).

As to awarding attorney's fees, this case is even more egregious than Goodarzi's since Katiraie continued the litigation against the Trustee even after the Goodarzi opinion came down in February 2010.  There was no reason to keep the Trustee in this

---

[9] Id., doc. 46, p. 6-7.

case as a party and this created an unnecessary burden on the estate.  I hereby adopt

the reasoning in my tentative ruling in the Goodarzi case[10] as a basis for awarding the

Trustee attorneys' fees and costs.

Judicial Estoppel

     Another argument made by the Trustee is that because Katiraie prayed for

attorney's fees in his complaint, the Trustee is entitled to his attorney's fees under state

law.  The parties have given me several California cases dealing with the effect of a

claim for attorney's fees in a pleading by the party who ultimately does not prevail and

then asserts that the other (prevailing) party is not entitled to its fees.

     International Billing Service, Inc. v. Emigh concerned the breach of a

confidentiality agreement, which both parties had signed.  This short agreement stated

that "You promise to reimburse Company for any legal fees, liability, or loss which

Company incurs as a result of any unauthorized disclosure or use of Confidential

Information by You."[11] There was a dispute as to whether this really is a fee provision,

but in the pleadings the plaintiff specifically asked for attorney's fees for a breach of the

confidentiality agreement.  When defendants prevailed and sought their fees, the

plaintiff opposed, in part contending that the contract did not provide for a fees award.

The court held that the plaintiff was judicially estopped from asserting that there was no

contractual fee provision:  "Where a party claims a contract allows fees and prevails, it

gets fees. Where it claims a contract allows fees and loses, it must pay fees."[12]

     Bear Creek Planning Committee v. Ferwerda[13] is critical of International Billing

---

[10] Id., doc. 56.
[11] International Billing Service, Inc. v. Emigh, 84 Cal.App.4th 1175, 1180 (2000).
[12] Id., at 1190.
[13] 193 Cal.App.4th 1178 (2011).

Services, but deal with a somewhat different situation.  There a property owner sued the

planning committee on the assertion that it inappropriately blocked construction on the

lot.  Defendants won and requested attorney's fees, which were awarded based on the

provision in some of the documents which stated: "In the event that it is necessary for

the [committee] to enforce the provisions of the [2002 architectural review manual] by

obtaining legal advice to clarify issues, initiate litigation, filing and/or preparing legal

documents or filing and preparing a Cease and Desist Order, then [the committee] shall

be entitled to recover its reasonable attorney fees and costs from the Performance

Deposit or other means as may be deemed necessary. Legal expenses above the

performance deposit may be recovered by fines assessed."[14]

However, there was no attorney's fees provision in the CC&Rs and the court

found that the Planning Committee did not have the power to bind the homeowners to

an attorney's fee provision without their approval.  Since nothing in the CC&Rs could be

used to assert that attorney's fees were to be awarded in this type of litigation, the Court

of Appeal reversed the award of attorney's fees.

The Court of Appeal found the language of International Billing Services to be too

broad.  Citing to M. Perez Co., Inc. v. Base Camp Condominiums Assn. No. One,[15]the

Court stated:

> We explained in Perez: "The fallacy of the rule stated in International Billing
> Services is the assumption that if the party who claims that a contract allows fees
> prevails in the underlying litigation, it gets attorney fees. In truth, the party must
> still prove that the contract allows attorney fees. The mere allegation is not
> enough." (Perez, at p. 468.) The same applies for a losing plaintiff. For a losing
> plaintiff to be required to pay attorney fees, the plaintiff's "bare allegation that [h]e
> is entitled to receive attorney's fees [is] not … sufficient"; he also had to have
> established the attorney fees clauses "actually entitled" him to recover fees.
> (Leach v. Home Savings & Loan Assn. (1986) 185 Cal.App.3d 1295, 1307 [230

---

[14] Bear Creek Planning Committee v. Ferwerda, 193 Cal.App.4th 1178, 1182 (2011).
[15] 111 Cal.App.4th 456 (2003).

Cal.Rptr. 553].) Here, [plaintiff] never so established, and as we have explained, he could not so establish because the attorney fees provisions in the green book and the 2002 architectural manual did not legitimately serve to add an attorney fees provision to the CC&R's. Therefore, the [defendants] could not claim the right to attorney fees simply because [plaintiff] had asked for those fees in his complaint.[16]

In the Third Amended Complaint, the Plaintiff prays for "attorneys' fees if and as provided by law" on all claims for relief.[17]  This is not the specific kind of language that would fit under either the International Billing Services or the Bear Creek test.  So judicial estoppel does not apply.


Sanctions under Federal Law

However the Court is not limited to the law of California, but can look to the purposes of the Bankruptcy Code, the Federal underpinnings of FRBP 7054 and the federal courts' inherent power to award sanctions.   As the Supreme court held in Chambers v. NASCO, Inc., "[A] court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"[18]

There are several cases which discuss imposing attorney's fees when the Trustee is embroiled in litigation for what appears to be bad faith or oppressive conduct. In Vaniman the bankruptcy court awarded fees to the trustee both under the New York law dealing with fraudulent transfers and also because it felt that merely undoing the fraudulent transfers was not enough since the losing party had forced the trustee into extended litigation to establish that the trustee had a right to liquidate the debtor's assets.  The award of fees was also necessary as a deterrent to others who would deal

---

[16] Id., at 1187.
[17] Adversary Proceeding, doc. 107, §44.
[18] 501 U.S. 32, 46 (1991)(citations omitted).

-13-

1
2
3
4
5
6

in such unnecessary litigation at the expense of the estate.[19]  Roco involved the

trustee's objection to claims where the underlying basis of the claims had been

previously set aside and avoided as fraudulent transfers by the Bankruptcy Court, the

Bankruptcy Appellate Panel, and the First Circuit Court of Appeal.  Following the

reasoning in Vaniman, the court held that

7
8
9
10
11

> the present litigation is being pressed mainly for the purpose of taking yet
> another bite at an apple which Consove consumed long ago, and has served
> only to further delay the distribution of assets to creditors and to reduce their
> recovery, to the extent of the cost of this most recent litigation. In fairness,
> Edward Consove should bear some portion of the trustee's attorney's fees
> incurred in defending against the allowance of claim 69. The legal expense of
> this litigation expense should not be borne fully by creditors.[20]

12
13
14

In re Kellar analyzed the use of FRBP 7054 to award attorney's fees as costs

and the cases to date and noted that

15
16
17

> Similarly, Bankr.R. 7054(b), the more permissible bankruptcy analogue to
> Fed.R.Civ.P. 54(d), does not generally encompass an award of attorney's fees
> absent exceptional circumstances demanding equitable redress, since "costs are
> merely court costs incurred from the filing of the proceeding." [citations
> omitted].[21]

18
19
20
21
22
23
24
25
26

The more recent case of Lee v. American Student Assistance Agency accepted

the standard articulated in Vaniman, Keller, and Roco, but found that the facts of the

Lee case did not amount to egregious conduct which was sufficient to base an award of

attorney's fees.[22]  And this same standard was employed by the Eighth Circuit

Bankruptcy Appellate Panel in Seimer v. Nangle, which used the general test articulated

in Chambers of conduct that was vexatious, wanton, or oppressive.[23]  This test is still in

use and when the court has found that a party acted in bad faith, attorney's fees have

27
28

---

[19] Pirrone v. Toboroff (In re Vaniman), 22 B.R. 166, 194 (Bankr. E.D.N.Y. 1982).
[20] In re Roco Corp., 37 B.R. 770, 775 (Bankr. R.I., 1984).
[21] In re Kellar, 125 B.R. 716, 719 (Bankr. N.D.N.Y., 1989).
[22] Lee v. American Student Assistance Agency (In re Lee), 239 B.R. 9 (Bankr. C.T., 1999).
[23] Seimer v. Nangle (In re Nangle), 281 B.R. 654, 658 (8th Cir. BAP, 2002).

1 | been awarded.[24]

2

3      In <u>Gomez v. Vernon</u> the Ninth Circuit has developed this test as follows:
A court has the inherent power to sanction a party or its lawyers if it acts in "willful
4 disobedience of a court order … or when the losing party has acted in bad faith,
vexatiously, wantonly, or for oppressive reasons," as well as for "willful[] abuse
5 [of the] judicial processes." Roadway Express, Inc. v. Piper, 447 U.S. 752, 766,
65 L. Ed. 2d 488, 100 S. Ct. 2455 (1980) (internal citations and quotations
6 omitted); see also Chambers v. NASCO, Inc., 501 U.S. 32, 46-47, 115 L. Ed. 2d
27, 111 S. Ct. 2123 (1991) (where litigant "engaged in bad faith or willful
7 disobedience of a court's order," inherent power "extends to a full range of
litigation abuses"). We review a court's imposition of sanctions for abuse of
8 discretion. See Chambers, 501 U.S. at 55 (inherent power). We recently
addressed the appropriate basis for an award of sanctions under a court's
9 inherent authority in Fink v. Gomez, 239 F.3d 989 (9th Cir. 2001). We held that
Roadway and Chambers require that inherent-power sanctions be preceded by a
10 finding of bad faith, or conduct tantamount to bad faith. Id. at 993. Under this
standard, although recklessness, of itself, does not justify the imposition of
11 sanctions, sanctions are available when recklessness is "combined with an
additional factor such as frivolousness, harassment, or an improper purpose." Id.
12 at 994. Sanctions, then, are justified "when a party acts for an improper purpose-
even if the act consists of making a truthful statement or a non-frivolous
13 argument or objection." Id. at 992 (emphasis in original).[25]

14

15      The Plaintiffs recklessly continued to keep the Trustee embroiled in the Katiraie

16 litigation and cannot articulate a proper purpose for doing so.  It is totally clear that the

17 Trustee was not challenging Plaintiff's assertion that he had an ownership interest in the

18 Corona Center and there was no reason for the Trustee to care since whatever interest

19 the estate had (be it 100% or 0% or anything in between) was sold and transferred by

20 the Sale Order.  Even if the Trustee stipulated that Katiraie had his claimed interest, if

21 would have no effect on the litigation against the real parties in interest, who were

22 United and Radnet (the buyer under the Sale Order and the later transferee of the

23 Corona Center).  Thus naming the Trustee and then fighting to keep him as a party

24 (there had been two motions to dismiss by the Trustee which were opposed by the

25 Plaintiff) was a frivolous litigation tactic, was oppressive, and had real negative results

26

27

28
---
[24] For example, <u>see</u> Fluor Enters. V. Orion Ref. Corp (in re Orion Ref. Corp.), 372 B.R. 688, 704 (Bankr. DE, 2007).
[25] 255 F.3d 1118, 1133-1134 (9th Cir. Idaho 2001).

to the professionals and other creditors of the estate who would be forced to bear the

cost of the fees expended by the Trustee in his defense.  And this amounts to bad faith.

As to the monies allegedly owed prior to the sale, Katiraie could have and should

have simply filed an administrative claim and thus the burden to go forward would have

shifted to the Trustee.  Once again this was oppressive and bad faith behavior on his

part.


Amount of Fees

As to the amount of the fees, this has been a horribly handled case by the

attorney(s) for the Plaintiff.  While they do not bear the sole blame for the excessive

litigation that has occurred, they are responsible for the majority of it.  The discovery

was so badly done that I have had to appoint outside attorneys to be present so that

depositions could be concluded.

Even though it was clear that the Trustee held no money that could be claimed

by Katiraie even if he were to prevail against United and Radnet, Plaintiff insisted on

keeping the Trustee as a defendant in this case.  The Trustee initially sought to be

dismissed on the theory of implied judicial immunity, but was unsuccessful.  Therefore I

will not grant fees as to that motion and am thus reducing the requested fees by

$6,725.50.

As to the items objected to by the Plaintiff, the court agrees with very few of

them.  However there does appear to be some duplication due to the fact that multiple

attorneys worked on this case at the same time.  I will reduce the fees requested by

$5,000 to compensate for this.

1    I am hereby allowing fees to the Trustee in the total amount of $105,203.50 and

2  costs of $383.

3  ###

DATED: July 27, 2012

_____
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*): **ORDER GRANTING DEFENDANT CHAPTER 7 TRUSTEE DAVID GOTTLIEB'S  MOTION FOR AN AWARD OF ATTORNEY'S FEES OF $105,203.50 AND COSTS OF $383.00**_____
was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner stated below:

**1.    SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** – Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of (*date*)_____, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

Steven Gubner Email: sgubner@ebg-law.com
Richard Burstein Email: rburstein@ebg-law.com
Martin Rudoy Email: marty@rudoylaw.com
Steven Fox: emails@foxlaw.com
Beth Ann Young Email: youngbry@lnbyb.com
Mark L Share Email: mshare@dwclaw.com
Holly Roark Email: holly@roarklawoffices.com
Daniel Lev Email: dlev@sulmeyerlaw.com
Yi S. Kim Email: ykim@greenbass.com
David Gottlieb Email: dkgtrustee@crowehorwath.com
Martin Brill Email: mjb@lnbrb.com
Wayne S. Ball Email: wball@greenbass.com
Michael Abrams Email: mabrams@wolfgroupla.com

☐  Service information continued on attached page

**2.    SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

Moosa Heikali
830 Princeton Street
Santa Monica, CA 90403-2218

Nato Fund Inc.
c/c Bruce Yasmeh
7324 N. Sepulveda Blvd.
Van Nuys, CA 91405

☐  Service information continued on attached page

**3.    TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☐  Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9021-1.1.NOTICE.ENTERED.ORDER**